**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

**ARMOUR ROBINSON,**

      **Plaintiff,**

**v.**                                                                              **Civil Action No. 3:12-CV-3853-L-BK**

**NEXION HEALTH AT TERRELL, INC.,**

      **Defendant.**

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and the District Judge's *Standing Order of Reference*, Doc. 11, this case has been referred to the United States Magistrate Judge for pretrial management. The Court now considers Defendant's *Motion for Summary Judgment*. Doc. 30. For the reasons discussed below, it is recommended that the motion be **DENIED**.

**BACKGROUND**

**A.**     **Procedural History**

Plaintiff alleges in her amended complaint that Defendant, her former employer, willfully violated the Fair Labor Standards Act ("FLSA") by failing to pay her one and one-half times her regular rate for overtime hours worked in excess of 40 hours per week while she was employed by Defendant as a licensed vocational nurse ("LVN"). Doc. 15 at 1, 4-5. She seeks all unpaid overtime compensation, an additional equal amount as liquidated damages, and an award of attorneys' fees, costs, and interest. Doc. 15 at 5. Defendant now moves for summary judgment. Doc. 30.

**B.     Facts**

In August 2008, Defendant hired Plaintiff as an LVN, a job which required her to administer medical treatments, give patients medication, document patient care, and oversee nursing assistants assigned to her station.  Doc. 35-1 at 7, 9-10 (A. Robinson Dep.).  Plaintiff initially reported to Director of Nursing Mary Cole, then to Mae White (until shortly before Plaintiff was terminated), and then to Kristi Hurst.  Doc. 35-1 at 11 (A. Robinson Dep.).  Defendant terminated Plaintiff's employment in 2012 after finding that she had falsified documentation about a patient's care.  Doc. 35-1 at 8, 189 (A. Robinson Dep.).

Defendant's employee handbook prohibits hourly employees from working "off the clock" or through their meal breaks, and Plaintiff understood the policy.  Doc. 34-1 at 5 (Defendant's employee handbook); Doc. 35-1 at 16 (A. Robinson Dep.).  Defendant's timekeeping system consisted of employees swiping a plastic time card when clocking in or out of work and before and after meal breaks.  Doc. 35-1 at 14 (A. Robinson Dep.).  Employees also could submit a "missed punch" form to correct any mistakes or inaccuracies, such as if one forgot to clock in or out.  Doc. 35-1 at 16 (A. Robinson Dep.).  Plaintiff testified that she was told to fill out a missed punch sheet on days that she did not take a lunch break, so that she would not get paid for lunch, even though she had worked through her break, and she complained to Cole, White, and Hurst that it was unfair.  Doc. 35-1 at 16, 25-26 (A. Robinson Dep.).

Plaintiff testified that after Cole and White told the nurses to eat in the dining room instead of at the nurse's station, the nurses stopped taking meal breaks because they were too busy.  Doc. 35-1 at 15 (A. Robinson Dep.).  Nevertheless, White and Cole pressured nurses, including Plaintiff, to clock out for lunch, and Cole told Plaintiff to take her lunch break, but working through lunch was the only way that all the work could get done.  Doc. 35-1 at 15, 28

(A. Robinson Dep.). Plaintiff was reprimanded in writing twice by White and/or Cole for working excessive hours after her shift and for not taking lunch breaks. Doc. 35-1 at 30 (A. Robinson Dep.). She testified that her then boss, White, urged her and other LVNs to clock out when their shifts were over and, when Plaintiff stated that she could not get all of her work done in the allotted time, White told her "I cannot tell you to work off the clock, but I will tell you your work has to be done before you leave the facility." Doc. 35-1 at 31-32 (A. Robinson Dep.). Plaintiff recalled that sometimes someone would get on the intercom near the end of her shift and say "I need all 62 nurses to get off the clock," and when the nurses would say they were not finished with their work, they would still be told to clock out. Doc. 35-1 at 27 (A. Robinson Dep.). They were also told, however, that they had to have their work done before they could leave because if it was not done, there would be repercussions, so Plaintiff would clock out and keep working because she needed to keep her job. Doc. 35-1 at 27(A. Robinson Dep.); Doc. 46-1 at 10-11, 16-17. Other times, the announcement would not be made over the intercom, but someone would come to her desk and tell her to clock out even if she was not done with her work. Doc. 35-1 at 27 (A. Robinson Dep.). Plaintiff testified that for the last year or two of her employment, she worked off the clock almost every day after the end of her shift. Doc. 35-1 at 27(A. Robinson Dep.).

 Defendant's pay records and Plaintiff's time sheets indicate that Plaintiff did not clock out for meals on 159 of her 598 shift dates in the three years prior to her filing suit, and she was paid for that time. Doc. 32-2 at 2-70; Doc. 33-1 at 1-82; Doc. 34-3 at 1-16 (M.L. Robinson Decl., Exs. A-1, A-2; V. Tall Decl. Ex. B-1). The records also indicate that, during the three years before she filed this lawsuit, Plaintiff clocked out a total of 23,417 minutes after the scheduled end of her shifts, for an average of approximately 39 minutes per day. Doc. 33-1 at 1-

3

82; Doc. 34-3 at 1-16 (M.L. Robinson Decl. Ex. A-2; V. Tall Decl. Ex. B-1).  When Plaintiff reported her overtime, she acknowledges that she was paid for that work.  Doc. 35-1 at 32 (A. Robinson Dep.).  Defendant's records reflect that Plaintiff was paid the following amounts in overtime pay:  (1) $2,184.03 during the relevant period in 2009; (2) $8,232.39 in 2010; (3) $5,336.86 in 2011; and (4) $2,828.49 in 2012.  Doc. 32-2 at 2-70 (M.L. Robinson Decl. Ex. A-1).  Plaintiff does not have any of her own records of the hours that she worked that contradict Defendant's records.  Doc. 35-1 at 21 (A. Robinson Dep.).

     Kristi Hurst testified that when she was a nurse (during the first part of Plaintiff's employment), she never worked off the clock.  Doc. 46-3 at 6-7, 10 (K. Hurst Dep.).  However, White told her that she had to clock out for lunch even if she had to work through her break because White "didn't want the overtime on the clock."  Doc. 46-3 at 7 (K. Hurst Dep.).  When White tried to get Hurst to fill out a missed punch sheet for days when Hurst did not take a lunch, Hurst refused even though she knew it could get her in trouble.  Doc. 46-3 at 13 (K. Hurst Dep.).  Additionally, Cole and White both told Hurst to clock out at the end of her shift regardless of whether she was finished with her work.  Doc. 46-3 at 8-9 (K. Hurst Dep.).  Hurst averred that White made it clear that nurses were at risk of being written up if they did not clock out, and she was acting on Cole's policy.  Doc. 46-3 at 9 (K. Hurst Dep.).  Hurst even believed that she might get fired for refusing to clock out.  Doc. 46-3 at 11(K. Hurst Dep.).  After Hurst took over the Director of Nursing position from Cole in July 2011, nobody pressured her to prevent nurses from working overtime.  Doc. 36-4 at 3, 7 (K. Hurst Dep.).  Further, as Plaintiff's supervisor, she expected Plaintiff to record on the clock, and get paid for, all of the hours that she had actually worked.  Doc. 36-4 at 9 (K. Hurst Dep.).

4

April Rose, the LVN with whom Robinson worked most frequently, testified that she was never instructed to work after clocking out and was never asked to clock out for a lunch break that she had she worked through.  Doc. 35-1 at 10 (A. Robinson Dep.); Doc. 36-2 at 3 (A. Rose Dep.).  Rose did recall hearing an announcement over the public address system once, telling all employees to clock out.  Doc. 36-2 at 3-4.  Debra McIntyre, another LVN, testified that when she was too busy to take a lunch break, Cole wrote her up five times for refusing to fill out a missed punch sheet which would have indicated that she had taken a break.  Doc. 36-3 at 3-4 (D. McIntyre Dep.).  McIntyre also stated that Cole wanted her to clock out at the end of the day even if all her work was not finished, but McIntyre just kept working and did not clock out until she completed her work.  Doc. 36-3 at 3-4 (D. McIntyre Dep.).  McIntyre testified that Cole wrote her up approximately seven times for not clocking out right when her shift was over, even after McIntyre told Cole that she still had work to do.  Doc. 46-4 at 9-10 (D. McIntyre Dep.).

## **APPLICABLE LAW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party moving for summary judgment has the initial burden of  "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue

5

for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). Nevertheless, when ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Id.*

The FLSA, 29 U.S.C. §§ 201-219, requires all covered employers to pay non-exempt employees at one and one-half times their regular hourly rate for all hours in excess of 40 during one work week. 29 U.S.C. § 207(a)(1). Employers subject to the FLSA are required to "make, keep, and preserve" records of their employees' wages and hours worked. 29 U.S.C. § 211(c). An employee who brings suit for unpaid overtime compensation generally bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated." *Reeves v. Int'l Tel. and Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980), *abrogated on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).

However, when an employer fails to maintain complete and accurate timekeeping records, "[t]he solution ... is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972)). Instead, when "the inaccuracy is due to the employer's failure to keep adequate records as required by statute, imprecise evidence on quantum can provide a sufficient basis for damages." *Reeves*, 616 F.2d at 1351. An employee can thus satisfy her burden if she (1) proves that she has performed work for which she was improperly compensated; and (2) produces sufficient evidence to show the

amount and extent of that work as a matter of just and reasonable inference. *Anderson*, 328 U.S. at 687-88. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *Id.* at 688. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may only be approximate. *Id.*

Additionally, a plaintiff must show that she was "employed" by an employer during the period for which she claims overtime. *Newton v. Henderson*, 47 F.3d 746, 748 (5th Cir. 1995). An employee is "employed" during those hours that the employer had either actual or constructive knowledge that the employee was working. *Id.* (citation omitted). "An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Id.* (internal quotations omitted). An employee is not estopped from claiming additional overtime if the employer knew or had reason to believe that the reported information was inaccurate. *Id.* at 749 (quoting *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972)).

## **PARTIES' ARGUMENTS**

Defendant contends in support of its summary judgment argument that Plaintiff has not produced any evidence that Defendant knew or should have known that she was working unpaid overtime and deliberately falsifying her time records. Doc. 31 at 14-16. Moreover, Defendant asserts that Plaintiff's allegation that she underreported her time because she feared being disciplined does not render Defendant liable under the FLSA because an employer is entitled to prevent its workers from working overtime. Doc. 31 at 16-17. To demonstrate its inability to

learn about Plaintiff's alleged unpaid overtime, Defendant points to (1) its company policy against working off the clock, of which Plaintiff was aware; (2) the fact that other employees of Defendant had no way to know what Plaintiff was doing on her lunch breaks; and (3) the fact that Plaintiff clocked out well after the end of her shift for almost the entire three years before she filed suit and admits that she was paid overtime for those hours.  Doc. 31 at 17.  Defendant additionally argues that Plaintiff's FLSA claim must fail because she has no "definite and certain" evidence of the fact or amount of her alleged overtime hours.  Doc. 31 at 18-22.

     Plaintiff counters that a genuine issue of material fact exists as to whether Defendant had knowledge that Plaintiff was working off the clock through lunch and after her shift, as evidenced by Plaintiff's testimony that she was doing so on the instructions of her supervisors. Doc. 46 at 10-11, 17-19.  Plaintiff also points to (1) Hurst's testimony that White told her to work off the clock and she knew her job was in jeopardy for refusing to do so; and (2) McIntyre's testimony that Cole repeatedly reprimanded her for (a) not clocking out for lunch breaks she had worked through and then refusing to submit a missed punch form and (b) not clocking out when she stayed late to finish her work.  Doc. 46 at 12-15, 19-21.  Plaintiff argues that Defendant had at least constructive knowledge through White and Cole that Plaintiff worked off the clock during her lunch break and after her shift and did not get paid for that work.  Doc. 46 at 21.

     Plaintiff also argues that a genuine issue of material fact exists as to whether she has produced competent evidence of the number of unpaid overtime hours she has worked.  Plaintiff asserts that she need not produce "definite and certain" evidence of her hours because Defendant's timekeeping records are not accurate and, thus, she need only produce sufficient evidence to show the amount of work as a matter of "just and reasonable inference."  Doc. 46 at

23-24. Plaintiff argues that she has provided such evidence in light of her testimony that (1) from 2010-2012, she had to work almost every day after she clocked out and (2) she was required to clock out for lunch breaks on an almost daily basis, whether she took a lunch or not. Doc. 46 at 22-23 (citing A. Robinson dep., Doc. 35-1 at 28-29 and Doc. 46-1 at 11-12). Plaintiff also has submitted a sworn declaration stating that she can "reasonably estimate" that she worked (1) an average of 30 minutes per day through her lunch break on those days she was forced to clock out or fill out a missed punch sheet and (2) an average of 1.25 hours a week off the clock at the end of her shift. Doc. 46-2 at 2.

Defendant replies that Plaintiff has no evidence that Defendant knew she was working off the clock during her lunch breaks, and the testimony of McIntyre, Hurst, and Plaintiff actually demonstrates that Defendant required that missed punch sheets be filled out, not to cause nurses to underreport their time, but only to explain why they did not take a lunch break. Doc. 50 at 11-14. As to the amount of overtime she allegedly was not paid for working through lunch off the clock, Defendant asserts that Plaintiff cannot meet her burden of proof because she has not identified which days or how many shifts she worked through lunch off the clock nor did she identify the pay periods such that it can be ascertained whether she would have been entitled to overtime pay during that period.[1] Doc. 50 at 15. Finally, Defendant challenges Plaintiff's sworn declaration, arguing that it conflicts with her deposition testimony because, during her deposition, she denied knowing how much unpaid overtime she was owed. Doc. 50 at 17-19.

---

[1] While Defendant contends that Plaintiff claims to have worked a total of only 1.25 hours of post-shift overtime per week, Doc. 50 at 15, that is inaccurate. Plaintiff claims that she worked 1.25 hours of *unpaid* post-shift overtime per week. Doc. 46-2 at 2 (A. Robinson Dec.). Defendant additionally argues that Plaintiff has no evidence that White told her to work off the clock at any time during the three years prior to filing the case for statute of limitations purposes. Doc. 50 at 9. That, too, is inaccurate as Plaintiff testified that she had such discussions with White in January 2012. Doc. 46-1 at 12-14 (A. Robinson Dep.).

## ANALYSIS

Upon consideration of the parties' arguments and the law, the Court recommends that Defendant's *Motion for Summary Judgment* be denied. To prevail on summary judgment, Defendant first must show that there is no genuine issue of fact as to Defendant's knowledge that Plaintiff was working overtime and not getting paid for all of the hours she had worked. As set forth above, considering all evidence in the light most favorable to Plaintiff, she has provided deposition testimony that Cole and White cajoled and threatened her and other LVNs to work off the clock both during lunch time and after their shifts ended. That other LVNs did not submit to such pressure, does not vitiate Plaintiff's evidence that she did. Moreover, while Defendant points to testimony that suggests Defendant required LVNs to fill out missed punch sheets only to explain why they did not take a lunch break, not to underreport their time, there is a material dispute of fact in that regard because there is evidence that the forms may have been used for both purposes. *See* Doc. 35-1 at 16, 25-26 (Plaintiff's testimony that she was told to fill out a missed punch sheet on days that she did not take a lunch break so that she would not get paid for lunch); Doc. 46-3 at 7-8, 13 (Hurst's testimony that White told her she had to clock out for lunch because White did not "want the overtime on the clock" and that Cole "was upset about it"; further testimony that when White tried to get Hurst to fill out a missed punch sheet for days on which she did not take a lunch break, Hurst refused even though she knew it could get her in trouble).

Moreover, as Plaintiff observes, given the nature of their work, an LVN could not simply clock out and leave when her shift ended without potentially jeopardizing patient health and her nursing license. *See* Doc. 46 at 15-16; *see also* Doc. 46-3 at 3-4 (Hurst's testimony that, as an LVN, before she could leave work, she had to complete documentation, complete entries in

patient treatment and medication books, finish charting, follow up on medication changes, and order medications; and any number of incidents could cause a shift to run long such as an accident, a medical emergency, or a new patient admission). The LVN's near universal descriptions of their jobs tend to demonstrate that they were often in a no-win situation time wise. Plaintiff testified that she would clock out for lunch, but work through her break period so she could increase her chances of clocking out on time due to the pressure on nurses to clock out when their shifts ended. Doc. 46-1 at 4 (A. Robinson Dep.). McIntyre testified similarly, noting that her goal was to clock out as close to the end of her shift as possible, which meant she did not have time for a lunch break sometimes, such as if she had to deal with a new admission to the facility, had dining room duty, or a resident had an incident. Doc. 46-4 at 3 (D. McIntyre Dep.).

McIntyre testified that finishing all of the work by the time her shift ended was not realistic and she had explained that to Cole, but Cole told her to "get off the clock" anyway. Doc. 46-4 at 10 (D. McIntyre Dep.). McIntyre averred that she could not take a lunch break most days and that she generally stayed past her shift finishing work for 90 minutes each day. Doc. 46-4 at 6, 8 (D. McIntyre Dep.). Hurst testified that, by shift's end, if a nurse had not finished her work, she had three choices: "Either don't finish and leave, go clock out and keep working, or continue to work on the clock and risk getting fired." Doc. 46-3 at 9 (K. Hurst Dep.). Based on the testimony and evidence presented, Plaintiff has established a material question of fact regarding whether Defendant, through its supervisors Cole and White, was aware that she was working overtime off the clock and not getting paid for it.[2] See Brennan v.

---

[2] While Defendant makes much of the fact that it did pay Plaintiff a significant sum in overtime wages, the fact that she got paid for some overtime does not necessarily mean she got paid for all of the time she actually worked. For example, Plaintiff could have stayed on the clock after her shift ended, been instructed to clock out 30 minutes later, and then worked for another 30 minutes off the clock.

*Gen. Motors Acc. Corp.*, 482 F.2d 825, 827-28 (5th Cir. 1973) (holding that the employer had constructive notice of employees underreporting overtime hours worked because, even though upper echelon management encouraged reporting of all hours, the employees' immediate superiors insisted that reported overtime hours be kept to a stated minimum level which resulted in uncompensated hours of overtime).

      Defendant's cases are not persuasive because none of them involves a situation where the plaintiff's supervisors reasonably could be charged with knowledge that the plaintiff was working unpaid overtime.  For example, in *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995), the appellate court held that the city could not be charged with constructive knowledge that a police officer had worked unauthorized overtime hours not reported on his time sheets while working on a federal task force, even though the city's police chief had access to information about the task force's activities and understood that undercover work could require overtime work.  The city and the task force supervisors told the officer not to work unauthorized overtime, and the officer did not comply with the city's established overtime procedures.  Thus, FLSA liability did not attach.  The *Newton* court also stated "Newton's payroll forms would not be reliable indicators of the number of hours worked, if there was evidence to support the conclusion that the City *encouraged or forced* Newton to submit incorrect time sheets." *Newton*, 47 F.3d at 750 (emphasis added).  There is evidence in the record before the Court that the latter is precisely the situation the LVNs working under Cole and White faced.

      Defendant also relies on *Uhler v. Galesi Mgmt. Corp.*, No. 98-cv-005-L, 1999 WL 20949, *5 (N.D. Tex. 1999) (Lindsay, J.), a case in which the court found that the plaintiff did not meet the "definite and certain" evidence standard because he had never recorded any of his overtime.  But that case is distinguishable because there was no indication that the plaintiff had

complained of having to work off the clock, he made only a vague statement that an unknown superior at an unspecified time told him not to record his overtime hours on his timesheet, and a former supervisor's statement that employees were told to record no more than 40 hours on their timesheets was not alleged to pertain specifically to the plaintiff.  Similarly, in *Brumbelow*, 462 F.2d at 1327, the appellate court held that the plaintiff was estopped from recovering compensation based on extra hours she required to meet the norm where it did not appear that the employer had encouraged workers to falsify reports or that the employer knew or should have known that the plaintiff who was unable to perform up to norm and was giving false information to conceal that fact in order to hold her job.  Again, that case is inapposite here as there is evidence that Defendant's managers forced LVNs to falsify their time records.

Furthermore, because there is sufficient evidence in the record tending to demonstrate that Plaintiff was instructed to falsify her timesheets on the instruction of her supervisors, the Court also concludes that Defendant failed to maintain accurate time records as required by section 211(c) of the FLSA.  As such, Plaintiff may satisfy her burden of proving the amount she is owed if she proves that she performed work for which she was improperly compensated and she produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  *Anderson*, 328 U.S. at 687-88.   The Court finds that standard to have been met here for purposes of surviving summary judgment.

In particular, Plaintiff averred that (1) from 2010-2012, she had to work almost every day after she clocked out for an average of 1.25 hours per week; and (2) she worked an average of 30 minutes per day through her lunch break on those days she was forced to clock out or fill out a

missed punch sheet.[3]  Doc. 35-1 at 28-29 and Doc. 46-1 at 11-12 (A. Robinson Dep.); Doc. 46-2 at 2 (A. Robinson Decl.).  Moreover, Plaintiff's averments are generally consistent with McIntyre's testimony that she was not able to take a lunch break most days and generally stayed at work late for 90 minutes each day.  Doc. 46-4 at 6, 8 (D. McIntyre Dep.).  This case is distinguishable from *Ihegword* in which the court found the plaintiff's estimate of the number of unpaid overtime hours she worked to be insufficient because it was couched in terms of approximations "to the best of her memory" and based on speculation.  929 F. Supp. 2d at 667-68.

## CONCLUSION

For the foregoing reasons, it is recommended that Defendant's *Motion for Summary Judgment*, Doc. 30, be **DENIED**.

**SO RECOMMENDED** on October 20, 2014.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[3] Contrary to Defendant's argument, the undersigned does not find Plaintiff's declaration to be so in conflict with her deposition testimony that it should be disregarded.  While Plaintiff testified that she did not know the amount of time or the dollar amount she thought Defendant owed her in overtime pay, she provided "reasonable estimates" of such time in her declaration, not exact figures, so any discrepancy between the testimony and her declaration is minimal.  This is unlike the direct conflict in the case Defendant cites in which a plaintiff averred in his affidavit that he was never paid for any overtime, but testified in his deposition that when he did record overtime, he was paid for it.  *Uhler*, 1999 WL 20949, at *5; *see also Ihegword v. Harris Cty. Hosp. Dist.*, 929 F. Supp. 2d 635, 665-66 (S.D. Tex. 2013) (finding a conflict between a declaration and deposition testimony where the plaintiff stated in her declaration that she would sometimes be compensated for overtime work if it was less than an hour's worth, but testified during deposition that she had to clock out as soon as her shift was over and was not paid for that work).

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE